TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00442-CR







Daniel Arthur Hillbish, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 44,166, HONORABLE RICK MORRIS, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of capital murder. Act of April 16, 1985, 69th Leg., R.S.,
ch. 44, § 1, 1985 Tex. Gen. Laws 434 (Tex. Penal Code Ann. § 19.03(a)(2), since amended). 
The State having waived the death penalty, the district court assessed punishment at imprisonment
for life.

 The murder victim was Kathleen Spears, appellant's wife. Kathleen Spears was previously
married to Jewel Spears and continued to use her former husband's surname after her marriage
to appellant. Kathleen and Jewel Spears were married from 1989 to 1991 and had one child,
Christopher Spears. Kathleen Spears married appellant in 1992 and bore a son, Joshua Spears,
on November 17, 1993, eight days before she was killed.

 Kathleen Spears filed for divorce from appellant in 1993. On June 8 of that year, a
protective order was issued on the application of Kathleen Spears prohibiting appellant, among
other things, from going to or within one thousand feet of the rented house trailer in which
Kathleen Spears and Christopher lived in Harker Heights. See Tex. Fam. Code Ann. § 71.11
(West Supp. 1994). In October 1993, Jewel Spears moved into the trailer with the intention of
helping Kathleen care for their son and for the baby who was soon to be born.

 On November 25, 1993, Kathleen, Jewel, and the two children visited neighbors, Helen
and John Schwartz, for Thanksgiving dinner. They returned to the trailer house at about 11:30
p.m. Jewel Spears picked up some dirty clothes as he walked through the living room and took
them to the laundry room. He testified, "I opened the door [to the laundry room] and I was pretty
much looking at somebody standing over a crossbow, I saw the tip of the arrow, I saw the curve
of the left side of the bow and a pair of eyes." "[I]t scared me pretty bad because it was
completely unexpected." The man in the laundry room, who was appellant, shot Spears in the
chest with an arrow from the crossbow: "I felt this hard thud in my chest and it pushed me back
a step or so." Spears began to struggle with appellant "to stay alive and to make sure nothing else
happened." During this struggle, appellant stabbed Spears repeatedly in the chest, abdomen, and
back with a "hand knife," a weapon designed to be held in a fist with the four-inch blade
extending between the index and middle fingers. Appellant told Spears, "You won't be fucking
my wife anymore." 

 Appellant left Jewel Spears lying on the living room floor and began to attack Kathleen
Spears. Jewel Spears tried to call for help but the telephone did not work, so he decided to seek
help from the neighbors. As he left the trailer, he saw appellant "kneeling over Kathy, she was
laying on the ground and he was straddled her, he had more or less one hand down and that knife
cocked back up in an assaultive position." 

 Jewel Spears made his way to the Schwartz residence, where he told John Schwartz that
"Daniel was down at the trailer stabbing people." Schwartz ran to the Spears trailer and looked
inside. He saw appellant in the dining room. "He had a . . . gun in his hand and he was yelling
at . . . Kathy: `Why did you do it?' And he was, kind of seemed agitated." Schwartz could hear
a child crying. He returned to his own trailer and called the police.

 William Presley was the first police officer to arrive at the scene in response to Schwartz's
call. He found Jewel Spears leaning on the front porch of Kathleen's trailer, bleeding from his
wounds, and then heard a gunshot from inside the trailer. Presley requested assistance. Within
minutes, numerous police officers arrived and surrounded the trailer. Presley could see "a small
child running back and forth" between the windows. After several shouted exchanges with the
police, appellant emerged from the trailer holding Christopher and Joshua and was immediately
arrested. 

 The police found Kathleen Spears's body in the dining room of her trailer. She had been
stabbed four times in the chest and back and shot once in the head. In addition to the weapons
previously mentioned, appellant was shown to have been armed with a large hunting knife and a
can of chemical mace. He also had brought a police scanner with him to the trailer.

 In point of error two, appellant complains of the district court's refusal to instruct the jury
on the lesser included offense of voluntary manslaughter. Penal Code, 63d Leg., R.S., ch. 399,
sec. 1, § 19.03, 1973 Tex. Gen. Laws 883, 913, amended by Act of May 28, 1973, 63d Leg.,
R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (Tex. Penal Code Ann. § 19.04,
since amended) (hereafter "section 19.04"). At the time of this offense, voluntary manslaughter
was a lesser included offense of capital murder if there was some evidence that the murder was
committed under the immediate influence of sudden passion arising from an adequate cause. Sec.
19.04(a); Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989) (opinion on motion for
rehearing). "Sudden passion" means passion directly caused by and arising out of provocation
by the person killed or by a person acting with her, and which arises at the time of the offense and
is not solely the result of former provocation. Sec. 19.04(b). 

 Appellant notes that Jewel Spears used words such as "crazy," "rage," "frenzy," and
"incoherent" to describe appellant's demeanor on the night of the offense. Appellant argues that
there was some evidence that this passionate behavior was provoked by his discovery of Jewel
Spears living with appellant's wife and infant son, who had been given Spears's name rather than
his own. Appellant relies on the opinion in Tooke v. State, 642 S.W.2d 514 (Tex. App.--Houston
[14th Dist.] 1982, no pet.). In that case, the defendant saw a strange car parked at his former
wife's home. Curious, the defendant stopped and looked through a window. He saw his former
wife and a man engaged in sexual activity. The defendant broke into the house, assaulted the man
with his fists, and then killed his former wife by beating her with his hands and fists. The court
of appeals stated that this evidence raised the "sudden passion" issue. 642 S.W.2d at 517.

 The evidence in Tooke suggested that the defendant flew into a rage after inadvertently
discovering his former wife in a compromising situation with another man. In this cause,
however, there was nothing inadvertent about appellant's conduct. Appellant armed himself with
a small arsenal and went to his wife's residence in violation of the protective order. There, he
secreted himself and waited for the return of Kathleen and Jewel Spears. Appellant shot Jewel
Spears on sight and then, after subduing Spears, fatally attacked his wife. There is no evidence
from which a jury could rationally find that appellant's assaultive conduct was an unplanned,
spontaneous reaction to the "discovery" of Jewel and Kathleen Spears in the trailer. To the
contrary, the evidence leads to the inescapable conclusion that the only difference between what
occurred in the Spears trailer and what appellant intended to accomplish by going there was that
Jewel Spears survived.

 There can be little doubt that appellant's murder of his wife was an act of jealous passion,
but this passion arose before appellant armed himself and went to his wife's trailer. Because it
did not arise at the time of the offense, it was not "sudden passion" within the meaning of section
19.04(b). Further, Spears's efforts to defend himself against appellant's attack cannot constitute
"adequate cause" from which sudden passion may arise for the purpose of a voluntary
manslaughter instruction. Sec. 19.04(c); Adanandus v. State, 866 S.W.2d 210, 231-32 (Tex.
Crim. App. 1993). 

 There is no evidence that appellant caused Kathleen Spears's death under the immediate
influence of sudden passion arising from an adequate cause. The district court did not err by
refusing to instruct the jury on voluntary manslaughter. Point of error two is overruled.

 In his other point of error, appellant contends the district court erred by admitting in
evidence a copy of the protective order issued in June 1993. In the order, the county court at law
found that "acts of family violence have occurred and are likely to occur in the foreseeable future"
and prohibited appellant from committing family violence. Appellant argues that this was hearsay
evidence and that its admission deprived him of his right to confront the witnesses against him. 


 Appellant relies on opinions in two prosecutions for murder of a spouse. Yates v. State,
489 S.W.2d 620 (Tex. Crim. App. 1973); Brooks v. State, 475 S.W.2d 268, 272 (Tex. Crim.
App. 1972). In each of these cases, the trial court admitted in evidence a temporary restraining
order issued without notice to the defendant in the pending divorce suit between the defendant and
the victim. In Yates, the order recited that "the court, after considering said application, is of the
opinion that immediate and irreparable injury will accrue to the petitioner if the following order
is not entered" and restrained the defendant from seeing or molesting the victim. In Brooks, the
order recited that "probable harm and injury may result to Plaintiff at the hands of the Defendant,
unless he is restrained as prayed for in Plaintiff's application." The Court of Criminal Appeals
held in each case that the admission of the temporary restraining order over the defendant's
hearsay objection was error.

 The protective order admitted in this cause recites that appellant appeared with counsel at
the hearing on Kathleen Spears's application. Moreover, the protective order reflects that
appellant and his attorney agreed to the order in both form and substance. A statement is not
hearsay if it is offered against a party and is a statement of which he has manifested his adoption
or belief in its truth. Tex. R. Crim. Evid. 801(e)(2)(B). 

 Appellant was accused of murdering Kathleen Spears in the course of committing burglary. 
Evidence that appellant had been ordered not to enter Spears's trailer was relevant to prove that
appellant's entry on the night of the murder was without effective consent. Although the
protective order contained a finding that family violence had occurred, the admission of the
protective order in this cause violated neither appellant's confrontation rights nor Rule 802 of the
Texas Rules of Criminal Evidence. Point of error one is overruled.

 The judgment of conviction is affirmed.



Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: February 8, 1995

Do Not Publish